# In the United States Court of Federal Claims

No. 19-907C
Filed Under Seal: February 7, 2020
Reissued: February 21, 2020[*]

---

**THE GREEN TECHNOLOGY GROUP, LLC,**

*Plaintiff,*

v.

**UNITED STATES,**

*Defendant,*

and

**LINTECH GLOBAL, INC.,**

*Defendant-Intervenor.*

---

Keywords: Cross-Motions for Judgement on the Administrative Record; RCFC 52.1; unbalanced pricing; disparate treatment; technical evaluation; past performance evaluation

---

*Todd R. Overman*, Bass, Berry & Sims PLC, Washington, DC, for the plaintiff, with whom were *Richard W. Arnholt* and *Sylvia Yi*, Bass, Berry & Sims PLC, Washington, DC, of counsel.

*Robert R. Kiepura*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C. for the defendant, with whom was *Kevin E. Bolin*, Defense Health Agency, Department of Defense, San Antonio, TX, of counsel.

*Michelle F. Kantor*, McDonald Hopkins LLC, Chicago, IL, for the defendant-intervenor, with whom was *James J. Boutrous*, McDonald Hopkins LLC, Bloomfield Hills, MI, of counsel.

**MEMORANDUM OPINION**

**HERTLING**, Judge

    The plaintiff, The Green Technology Group, LLC ("TGTG"), in this post-award bid protest alleges that the defendant, the United States, acting by and through the Department of

---

[*] Pursuant to the protective order entered in this case, this opinion was filed initially under seal. The parties provided proposed redactions of confidential or proprietary information. The resulting redactions are shown by asterisks enclosed by brackets, *e.g.*, "[***]." The Court also corrected a minor typographical error.

Defense, Defense Health Agency ("DHA" or the "Agency"), awarded a fixed-price contract to LinTech Global, Inc. ("LinTech") arbitrarily, capriciously and in a manner contrary to law. The plaintiff argues that the Agency failed to consider the risks in LinTech's materially unbalanced pricing, disparately and irrationally evaluated the offerors' Technical quotes, and improperly evaluated LinTech's Past Performance quote. TGTG requests a permanent injunction against the award to LinTech and that the Court disqualify LinTech's quote, and award the contract to TGTG. The DHA and the intervenor LinTech argue that the award was proper.

For the following reasons, the Court agrees with TGTG as to the Agency's unbalanced-pricing evaluation. Although price was the least important evaluation factor in this procurement, the Agency must adhere to the Federal Acquisition Regulation's ("FAR's") requirements. It failed to do so. Accordingly, TGTG's Motion for Judgment on the Administrative Record is granted in part, and denied in part, and the DHA's and LinTech's Cross-Motions for Judgment on the Administrative Record are granted in part and denied in part.

## I.    BACKGROUND

### A.    The Solicitation

In November 2018, the Agency issued Request for Quotation #HT001519R0004 (the "Solicitation") to General Services Administration Schedule 70 Federal Supply Schedule contract-holders for a fixed-price contract. The Solicitation, which was set aside for small businesses, sought information-technology services to perform Code Maintenance and Data Processing Operations Support for a nine-month base period and possible one-year option period and six-month extension. The Solicitation included a Performance Work Statement ("PWS") that outlined the required tasks (AR503-621)[1] and provided workload estimates for the base and option periods (AR611-12).

The Solicitation contemplated award of a fixed-price task order with 19 individual Contract Line Item Numbers ("CLINs") to a responsible offeror that submitted a responsive quote presenting the best value to the government. Quotes would be evaluated based on three factors: Technical, Past Performance, and Price. The Solicitation provided that the Technical score would be "significantly more important than Past Performance and Price [and] Past Performance is slightly more important than Price." (AR338.) The Technical factor included two subfactors in descending order of importance: Technical Approach and Management Approach. (*Id.*)

The Solicitation provided that quotes rated "Unacceptable" under the Technical Factor, "No Confidence" under the Past Performance factor, or "determined to have pricing that is materially unbalanced or not fair and reasonable will not be considered further for award." (*Id.*)

The Agency was to evaluate the Technical factor and subfactors and assess ratings of Outstanding, Good, Acceptable, Marginal or Unacceptable in accordance with the Solicitation's

---

[1] The Administrative Record (ECF 37-1) will be cited as "AR" followed by the relevant page number.

definitions. (AR339.) Each adjectival rating was associated with a level of risk of unsuccessful performance. (*Id.*) The Solicitation specifically defined "risk" as "the degree to which an offeror's proposed approach to achieving the technical factor may involve risk of disruption of schedule or degradation of performance, the need for increased Government oversight, and the likelihood of unsuccessful contract performance." (AR340.)

For the Past Performance factor, the Solicitation required the Agency to evaluate the relevancy of each past performance reference using Past Performance Questionnaires ("PPQs"), information offerors submitted as part of their proposals, and other available information on a scale of "Very Relevant" to "Not Relevant." (AR342.) The Solicitation also required the Agency to develop a performance-quality assessment of each quote based on the recency and relevancy of the overall past performance record of each bidder on a scale of "Substantial Confidence" to "No Confidence." (*Id.*)

The Solicitation required that the Agency conduct a price evaluation that "documented the fairness and reasonableness of the total evaluated price [("TEP")]." (AR341.) The TEP is calculated by first computing the total quoted price of the base year (adding all CLINs and all previously-provided Other Direct Costs and travel costs) and then including the sum of all option years. (*Id.*) The Agency's regulations require a price evaluation to be conducted under FAR Part 15, which includes an evaluation of unbalanced pricing,[2] instead of the simplified FAR Part 8 analysis typically required for Federal Supply Schedule contracts. *See* Dep't of Def. Class Deviation 2014-O0011, https://www.acq.osd.mil/dpap/policy/policyvault/USA001004-14-DPAP.pdf.

While the Solicitation contemplated making the award without discussions, it allowed for the Agency to conduct clarifications or discussions, if needed. (AR343.)

### B.   Initial Evaluation, Award and Protests

In December 2018, the Agency received three timely quotes from TGTG, LinTech, and a third offeror, "Offeror C." TGTG and LinTech received the following ratings:

---

[2] In a procurement with separately-priced line items, "[u]nbalanced pricing exists when, despite an acceptable total evaluated price, the price of one or more line items is significantly over or understated as indicated by the application of cost or price analysis techniques." FAR 15.404-1(g)(1).

|  | TGTG | LinTech |
|---|---|---|
| Overall Technical | Acceptable<br>Strengths=2, Weaknesses=9 | Outstanding<br>Strengths=17, Weaknesses=3 |
| A. Technical Approach | Acceptable | Good |
| B. Management Approach | Acceptable | Outstanding |
| Past Performance | Substantial Confidence | Satisfactory Confidence |
| Total Evaluated Price | $64,843,311 | $42,274,514 |

(AR1203.)

The Agency compared the offerors' prices to its Independent Government Cost Estimate ("IGCE") and determined that both were lower than the IGCE, TGTG's by [***] and LinTech's by [***]. (AR1076-77.)

Based on LinTech's overall Technical rating of Outstanding, Past Performance rating of Satisfactory Confidence, and lowest price of all offerors, the Agency awarded the contract to LinTech. (AR1203.)

TGTG protested the award decision to the Government Accountability Office ("GAO"). (AR1201.) The GAO denied TGTG's protest on the grounds that the Agency reasonably determined that LinTech's pricing would not result in an unreasonably high price, the Agency had evaluated the quotations in accordance with the Solicitation requirements, and TGTG was not prejudiced by the Agency's Technical and Past Performance evaluations. (*Id.*) Following this denial, TGTG filed its complaint in this Court in June 2019. (ECF 1.)

C. **Corrective Action, Reevaluation and Award**

The Agency took corrective action "to reconsider its award decision in light of the issues raised by TGTG and the GAO" after TGTG had filed its protest in this Court. (ECF 22.) The Agency's Technical Evaluation Team conducted a full reevaluation of the Technical factor. (AR1216-30.) The Technical factor reevaluation largely tracked the initial evaluation but removed one weakness the Agency had assessed to TGTG. (AR1218.) The Agency Source Selection Authority ("SSA") reevaluated the Past Performance and Price factors. (AR1232-49.)

The SSA's Award Decision Document added context to the Agency's Price re-evaluation. In particular, the Agency ascribed the significant difference between TGTG and LinTech's prices to the fact that the IGCE was "developed from [Planned Solutions International, LLC's ("PSI's")] ([***]) current pricing on the incumbent contract and because this requirement has not been subject to competitive pricing pressure since 2011."[3] (AR1247.)

---

[3] [***]. PSI is the incumbent contractor.

Ultimately, the Agency determined that LinTech's quote still presented the best value for the government because it was the "highest-rated technical proposal by far and the lowest-priced to the Government, with satisfactory confidence in [LinTech's] past performance." (AR1248.)

In October 2019, the Agency completed its reevaluation and re-awarded the contract to LinTech. (AR1231.)

### D. The Current Protest

Following the Agency's re-award to LinTech, TGTG filed an amended bid protest complaint. (ECF 33.) The Agency agreed to stay performance of the contract until February 29, 2020, (ECF 31), and Judge Kaplan transferred the case to this Court. (ECF 35.) The parties filed and briefed Cross-Motions for Judgment on the Administrative Record. The Court heard arguments on January 28, 2020.

## II. JURISDICTION AND STANDING

This Court has jurisdiction over bid protests pursuant to 28 U.S.C. § 1491(b). *See, e.g.*, *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005).

To have standing to protest, a plaintiff must demonstrate that it is an "interested party" who suffered prejudice from a significant procurement error, and but for that error, "it would have had a substantial chance of securing the contract." *See CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1358 (Fed. Cir. 2018). TGTG alleges that but for the Agency's improper price evaluation, TGTG would have received the contract because LinTech would have been disqualified. TGTG's standing is not contested. Therefore, TGTG is an interested party with standing to maintain this action.

## III. STANDARD OF REVIEW

In a Motion for Judgment on the Administrative Record pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"), "'the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" *Integral Consulting Servs., Inc. v. United States*, 140 Fed. Cl. 653, 657 (2018) (quoting *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006)). Under RCFC 52.1, the review is limited to the Administrative Record, and the Court makes findings of fact as if it were conducting a trial on a paper record. *See Bannum, Inc.*, 404 F.3d at 1354. The Court must determine whether a party has met its burden of proof based on the evidence contained within the Administrative Record. *Id*. at 1355. Unlike a summary judgment proceeding, genuine issues of material fact will not foreclose judgment on the Administrative Record. *Id*. at 1356.

The Court evaluates bid protests under the Administrative Procedure Act's standard of review of agency action. 28 U.S.C. § 1491(b); *Bannum, Inc.*, 404 F.3d at 1351. An agency procurement action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A). Agencies and their contracting officers are "'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (quoting *Latecoere Int'l, Inc. v.*

*U.S. Dep't of the Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994)).  Accordingly, the Court's review of a procuring agency's decision is "highly deferential."  *Advanced Data Concepts v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).

To prevail in a bid protest, the protester must show first, "a significant error in the procurement process[,]" and second, "that the error prejudiced it."  *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996); *see also Bannum*, 404 F.3d at 1351 ("First . . . the trial court determines whether the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract.  Second . . . [the trial court] proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct.").  When a protester alleges that the agency violated a law or regulation, the Court reviews that claim under the test articulated in *Data General Corporation* and *Bannum*.  *See Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (protester alleging violation of law must show a "clear and prejudicial violation of applicable statutes or regulations" such that the protestor had a "substantial chance" of receiving the award but for that error).

When a protester alleges that the agency's evaluation was arbitrary and capricious, this Court will not disturb agency action so long as the agency had a reasonable basis for its action, even though the Court might "have reached a different conclusion as to the proper administration and application of the procurement regulations" in the first instance.  *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989).  The Court cannot substitute its judgment for that of the agency, even if reasonable minds could reach differing conclusions.  *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974).

## IV.   ANALYSIS

TGTG alleges prejudicial errors with all three factors of the Agency's evaluation and with the Agency's award decision.  First, TGTG argues that the Agency performed an unreasonable price-reasonableness evaluation because it ignored both the risk inherent in LinTech's low price and in LinTech's unbalanced pricing.  Next, TGTG argues that the Technical evaluation lacked a rational basis because the Agency disparately treated the offerors, used the reevaluation to confirm weaknesses it assessed against TGTG, and assessed strengths to LinTech for the same characteristics of its proposal for which TGTG was assessed a weakness.  Finally, TGTG contends that the Agency inflated LinTech's Past Performance rating by considering irrelevant references.  According to TGTG, these evaluation flaws resulted in a flawed best value determination.

The Agency responds that the Price evaluation was proper and LinTech's pricing was not unbalanced and did not use a lower level-of-effort than required.  The Agency also asserts that its Price evaluation was adequately documented.  As for the Technical evaluation, the Agency argues that it was based on substantial evidence from the offerors' proposals and was not the result of unequal treatment.  The Agency argues that TGTG's complaints with LinTech's Past Performance evaluation were "mere disagreement" that cannot result in overturning the award.  As a result, the Agency argues, its best value determination was proper.  LinTech largely echoes the Agency, although it also argues that no price-realism evaluation was required.

### A. Price Evaluation

The Agency's price-reasonableness evaluation runs afoul of FAR 15.404-1(g)(2), which required the DHA, when it determined that LinTech's pricing was unbalanced, to consider both the risk of paying unreasonably high prices *and* the risk of unsuccessful performance.

Agencies must condition the award of a contract upon a finding that the proposal contains "fair and reasonable" prices, that is, prices that are not unreasonably high. FAR 15.402(a); *see also Distributed Sols., Inc. v. United States*, 106 Fed. Cl. 1, 21 (2012). As part of a fair-and-reasonable-pricing determination, an agency must determine whether offerors' prices are balanced. *See* FAR 15.404-1(g). Agencies must evaluate, through the price-analysis techniques in FAR 15.404-1(a), offers with separately-priced line items to determine whether any line-item price is significantly overstated or understated, that is, materially unbalanced. *See* FAR 15.404-1(g)(1).

A material imbalance "occurs if an award fails to represent the lowest ultimate cost to the Government or the imbalance is such that it will adversely affect the integrity of the bidding system." *SMS Data Prods. Group, Inc. v. United States*, 900 F.2d 1553, 1557 (Fed. Cir. 1990) (citation omitted) (distinguishing material imbalance from mathematical imbalance, which is when a "bid item fails to carry its share of the cost of work" plus indirect costs). There is no bright-line test to evaluate when an overstated or understated line-item price is of such significance as to pose risks of unsuccessful performance or unreasonably high prices; indeed, "a significant disparity in only one CLIN price may justify the rejection of a proposal as unbalanced." *Al Ghanim Combined Grp. Co. Gen. Trad. & Cont. W.L.L. v. United States*, 56 Fed. Cl. 502, 515 n.17 (2003). Accordingly, whenever an agency determines that any line-item price is unbalanced, the agency "*shall*" carry out the two-part performance and price-risk analysis required by the FAR to determine if the imbalance is material:

> All offers with separately priced line items or subline items shall be analyzed to determine if the prices are unbalanced. If cost or price analysis techniques indicate that an offer is unbalanced, the contracting officer *shall*—
>
> (i) Consider the risks to the Government associated with the unbalanced pricing . . . in making the source selection decision; *and*
>
> (ii) Consider whether award of the contract will result in paying unreasonably high prices for contract performance.

FAR 15.404-1(g)(2) (emphases added).

Both prongs of the FAR 15.404-1(g)(2) test are equally important. In addition to price risk, agencies must assess the performance risk of proposals with unbalanced pricing. FAR 15.404-1(g)(2)(i). To assess performance risk, an agency must assess the offeror's "expertise and apparent understanding of the contract, both of which are undermined by unbalanced pricing." *Harmonia Holdings Grp., LLC v. United States*, 136 Fed. Cl. 298, 309-10 (2018).

As with any other procurement decision, in an unbalanced-pricing analysis "the agency must articulate the reasons for its procurement decision including a rational connection between the facts found and the choice made." *Lab. Corp. of Am. Holdings v. United States*, 116 Fed. Cl. 643, 652 (2014).

Here, the Agency calculated the TEP for each offeror, then compared those prices to those of the other offerors and the IGCE. (*See* AR1245-47.) In the course of its pricing evaluation, the Agency implicitly determined that LinTech's pricing was materially unbalanced. (AR1247.) Instead of following the FAR's mandatory two-part unbalanced-pricing analysis after finding unbalanced pricing, however, the Agency analyzed and dismissed the price risk of LinTech's unbalanced price, and, in one sentence, dismissed any performance risk without analysis. The FAR requires more.

### 1. Price Risk

The Agency considered whether it would pay an unreasonably high price under LinTech's quote. The Agency determined that six of the 15 evaluated CLINs in LinTech's quote were overstated and five of the 15 were understated. (AR1247.)

The Agency determined that of LinTech's six overstated CLINs, three had only a "minor or insignificant plus-up over the IGCE amount for those CLINs." (AR1247.) Implicitly, therefore, the Agency found major or significant unbalancing in LinTech's prices for the other three CLINs that the Agency did not dismiss. Of the other three substantially overstated CLINs, the Agency determined that it did not risk paying an unreasonably high price:

> [b]ecause LinTech has really only overstated 3 CLINs (CLINs [***]) while the other 12 CLINs are lower than the IGCE amounts for those CLINs or essentially about the same, I find no risk that DHA will pay an inflated price. This is after all a fixed price task order[.]

(*Id.*)

After considering the over- and understated CLINs, the Agency admitted that "there is some lack of balance in both LinTech's and [Offeror C's] overall pricing[.]" (*Id.*) The Agency did not "find this unbalancing to be significant or unusual in terms of normal competitive pricing, particularly where this requirement has not been competed for such a long time." (*Id.*)

This finding determined that the unbalanced pricing in LinTech's quote did not give rise to a risk that the government would pay an inflated rate on this fixed-price procurement. Because the contract would be for a fixed price, the Court finds that the Agency's assessment of the price risk of LinTech's unbalanced pricing is not arbitrary and capricious.

### 2. Performance Risk

The Agency determined—in one sentence—that there was no risk of nonperformance. The Agency simply noted that all three offerors had proposed [***] "total labor hours" that the DHA had estimated would be required, but had "just all divided up or distributed these work

hours differently amongst the various CLINs and tasks." [4] (AR1247.) This determination is a comparison of CLIN prices to total labor hours, not an analysis of whether LinTech could perform the contract work with the level of effort or labor mix that it proposed for each CLIN. The Solicitation did not make the labor hours fungible between CLINs, so the Agency's analysis, focused only on the total labor hours, does not support the Agency's conclusion that there was no risk of nonperformance.

Unreasonably high contract prices are one, but not the only, risk to the government from unbalanced pricing. As in any best value procurement, "[o]f equal importance" to the Agency's unbalanced-pricing risk-assessment is LinTech's "expertise and apparent understanding of the contract, both of which are undermined by unbalanced prices." *Harmonia Holdings Grp.*, 136 Fed. Cl. at 309. FAR 15.404-1(g)(2)(i) requires the Agency at least to consider that performance risk, and the Agency failed to do so here in any meaningful way sufficient to reflect that it comported with the FAR provision's requirement.

The FAR provision noted above expressly requires that the Agency "consider the risks to the Government associated with the unbalanced pricing[.]" FAR 15.404-1(g)(2)(i). The Agency claimed for the first time in its Response and Reply in Support of its Cross-Motion for Judgment on the Administrative Record that the Technical factor evaluation contained the required analysis of LinTech's level of effort, or hours per CLIN, and labor mix, or which labor categories would perform each CLIN. (ECF 51 at 6 (citing AR1221-26).)[5] The Technical evaluation, however, does not make a single reference to LinTech's level of effort or labor mix. The Technical Evaluation Team, which conducted the Technical evaluation, did not have access to LinTech's Price quote, which contained the level of effort and labor mix. (AR1001 (identifying technical submission as "a Technical proposal narrative," a "Quality Control Plan," a "Task Order Management Plan," an "incoming Transition In Plan" and "Resumes of Key Personnel.").) The Team did evaluate LinTech's staffing matrix, which showed the labor mix and level of effort LinTech proposed, but its evaluation did not cover performance risk. The record shows that the Agency reiterated LinTech's statement that its staffing plan is "[***]" and the Agency's own evaluation of LinTech's retention and incumbent-capture efforts. (AR1225.)

---

[4] In fact, the Agency was incorrect. Only LinTech proposed [***] hours. (*See* AR730-45 (LinTech's proposal); AR1268-69 (Offeror C's proposal for [***] hours); AR966-1000 (TGTG's proposal for [***] hours).) Although these figures are comparable, the Agency's erroneous comment calls into question the care it took in evaluating the performance risk from each offeror.

[5] Initially, the Agency argued that the IGCE was based on the labor mix provided by [***], the current incumbent, and thus was not "dispositive." (ECF 48 at 15.) This argument ignores the fact that the IGCE is the government's "best estimate" of its needs, *Distributed Sols., Inc. v. United States*, 106 Fed. Cl. 1, 22 (2012), and all the offerors proposed comparable total levels of effort. (*See* note 4, *supra*.)

There is no indication in the record that the Agency considered whether LinTech's over- or understated CLINs corresponded with over- or understated labor hours or a different labor mix. A comparison of the IGCE labor-hour estimates to LinTech's, for instance, reveals that LinTech overstated the hours for CLINs [***] by [***], [***], and [***], respectively. (*See* AR637 (IGCE); AR732-34 (LinTech's Price proposal).) For understated CLINs [***], LinTech offered [***] of the labor hours that the Agency had estimated. (*See* AR637 (IGCE, estimating [***] hours for CLIN [***], [***] hours for CLIN [***] and [***] hours for CLIN [***]); AR731-36 (LinTech understated hours by [***]for CLIN [***], [***] for CLIN [***] and [***] for CLIN [***]).) These types of high labor-hour variances could represent performance risk even when the overall labor hours proposed by all three offerors were comparable.[6] The Agency's conclusion without analysis that no performance risk existed because all three offerors proposed comparable total labor hours was not rational when the Solicitation did not provide, and the Agency did not find, that labor hours were fungible between CLINs.

The DHA's evaluation cannot support a finding that none of LinTech's unbalanced pricing was material when the Agency never evaluated the performance risk in LinTech's pricing. The Agency's *post hoc* arguments are unavailing and not an acceptable substitute for the pre-award analysis required by the FAR. Despite what the Agency now argues, it found unbalanced pricing in LinTech's proposal. (*Compare* ECF 51 at 3 ("the Government did not find any of the offerors' pricing to be unbalanced," *with* AR1247 ("there is some lack of balance in both LinTech's and [Offeror C's] overall pricing").) Further, the DHA's argument that unbalanced pricing only exists as between the base and option years relies on a case in which the agency found no materially unbalanced CLIN prices. (ECF 48 at 13-14 (citing *Munilla Construction Management, LLC v. United States*, 130 Fed. Cl. 635, 652 (2017)).) These arguments do not negate the fact that the DHA found materially unbalanced pricing in evaluating LinTech's price quote but failed to evaluate that unbalanced pricing in accordance with the FAR. This failure does not comport with the FAR's requirement to evaluate price and performance risk when the Agency finds materially unbalanced pricing. *See* FAR 15.404-1(g)(2). The DHA's conclusion that there was no risk of nonperformance from LinTech's unbalanced pricing is unsupported without a documented analysis.

The Agency implicitly found materially unbalanced pricing in LinTech's proposal but failed to analyze LinTech's performance risk as the FAR requires. That failure is arbitrary and capricious and contrary to law. The Agency must follow the clear requirement of FAR 15.404-1(g)(2)(i) and review the level of effort and labor mix in the materially unbalanced CLINs in LinTech's proposal to determine whether there is performance risk therein.

The Court will not defer to the Agency's conclusory judgment that there was no risk, when the Agency failed to conduct the performance-risk evaluation required by the FAR or, at the very least, failed to document it.

---

[6] In addition to offerors' levels of effort, the FAR 15.404-1(g)(2)(i) performance-risk determination also implicates an offeror's labor mix. There is no evidence here that the Agency considered the performance risk, if any, of LinTech's labor mix.

B.  **Technical Evaluation**

TGTG argues that the Agency arbitrarily assessed strengths and resolved weaknesses for LinTech and held TGTG to a higher standard in its Technical factor evaluation than LinTech. The Agency responds that it properly assigned Technical ratings and did not treat the offerors disparately. The Agency also references this Court's considerable deference to agencies in the exercise of technical judgment. *See Benchmade Knife Co. v. United States*, 79 Fed. Cl. 731, 740 (2007). The Court finds that the Agency properly assigned Technical ratings. While there may be some merit to TGTG's disparate treatment argument, the Court finds that TGTG suffered no prejudice from the Agency's ratings.

The Court will not reevaluate the offerors' proposals. When an agency makes a judgment within its technical expertise that "reflect[s] a rational basis and [is] supported by the record, as here, the Court may not 'substitute its judgment for that of the agency.'" *Id.* (quoting *Bender Shipbuilding & Repair Co., Inc. v. United States*, 297 F.3d 1358, 1362 (Fed. Cir. 2002)). An agency's discretion, however, is not limitless. Agencies must still provide a "coherent and reasonable explanation of [their] exercise of discretion" when issuing a technical conclusion. *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009).

Agencies must "evaluat[e] proposals evenhandedly against common requirements." *CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 490 (2013). Procurement decisions that rely on disparate treatment are arbitrary and capricious. *PGBA, LLC v. United States*, 60 Fed. Cl. 196, 207 (2004). Agencies must apply the solicitation's evaluation factors "to each proposal consistently." *Active Network, LLC v. United States*, 130 Fed. Cl. 421, 429 (2017).

1.  **Adjectival Ratings, Strengths and Weaknesses**

TGTG argues that the Agency improperly upgraded two features of LinTech's proposal that it should have assessed as "significant weaknesses" to "weaknesses," and improperly assessed a "strength" that contradicted LinTech's assessed weaknesses. TGTG argues that these evaluation errors allowed the Agency to rate LinTech's proposal arbitrarily as "Outstanding," contrary to the Solicitation's evaluation criteria. Because the Agency's assessment of strengths and weaknesses was documented and rational, and its adjectival ratings were supported, TGTG's arguments are denied. *See Benchmade Knife Co.*, 79 Fed. Cl. at 740.

The Agency assessed LinTech two weaknesses: one for its transition-in plan, and a second for its lack of technical understanding and expertise with the "system components [and] the operating platforms these systems operate on" under the Technical Approach subfactor. (AR1223-24.) The Agency also assessed LinTech a strength for its Staffing Matrix under the Management Approach subfactor. (AR1225.)

Both the weaknesses and the strength were rational under the Solicitation's evaluation criteria and were documented. For the Technical Approach subfactor, under which the Agency assessed both weaknesses, the Agency had committed to evaluate offerors on their approach to systems analysis and transition-in, among other things. (AR340.) The weaknesses referred specifically to LinTech's lack of system-understanding affecting the transition-in plan (AR1223), and its lack of understanding or experience with system components creating risk that is not fully

11

offset by the "sound process and toolset for maintenance and support." (AR1224.) The Agency documented its analysis in the Consensus Technical Evaluation Report. (AR1223-25.) These weaknesses had no bearing on the strength the Agency assessed under the Management Approach subfactor.

In addition, the Agency rated LinTech as "Good" under the Technical Approach subfactor, "Outstanding" under the Management Approach subfactor, and "Outstanding" under the overall Technical factor. (AR1221-26.) TGTG argues that the Agency's decision to rate LinTech as "Outstanding" under the Technical factor was improper when LinTech was only rated as "Good" under the higher-rated Technical Approach subfactor. That argument is without merit because the Agency's evaluation of LinTech's proposal was its "17 strengths and 2 weaknesses" and the fact that the Agency "strongly fe[lt] the overall technical proposal presents and [sic] exceptional proposed approach and understanding of the PWS[.]" (AR1226.)

The Agency adequately documented its conclusions as to LinTech's strengths, weaknesses and adjectival ratings, and the Agency's conclusions are consistent with the facts in the Record. Under the deferential standard of review owed to these decisions, the Court will not second-guess the Agency's documented technical judgment.

### 2. Disparate Treatment

TGTG also argues that the Agency inconsistently evaluated TGTG's and LinTech's proposals. While this argument may have merit, TGTG cannot establish that it was prejudiced by the Agency's evaluation of its proposal. Because TGTG has not demonstrated "that there was a substantial chance it would have received the contract award but for" these alleged inconsistent evaluations, TGTG cannot prevail. *See Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999).

The Agency focused on TGTG's proposal to team with the incumbent contractor, PSI and appears to have downgraded TGTG's proposal without rational explanation, even when TGTG's and LinTech's proposals were identical. (*Compare* AR1216 (citing AR892) (assessing a weakness to TGTG when it identified [***]), *with* AR1222 (citing AR752) (assessing a strength to LinTech for having the same [***]).) TGTG noted similarly disparate treatment when the Agency assessed LinTech a strength for [***] (AR1224 (citing AR781) (assessing strength to LinTech)), but did not assign a strength to TGTG for doing the same (AR920-22). The Agency continued its disparate treatment by assessing a weakness to TGTG (AR1717 (citing AR900-01)) but not to LinTech (AR758-62) for failing to address the procurement of hardware, software and other materials in PWS section 5.19.[7]

TGTG raises legitimate concerns regarding the Agency's disparate evaluations, but the Court need not resolve those concerns. Even if TGTG had received the same strengths and weaknesses as LinTech for their comparable proposal features identified above, LinTech would

---

[7] TGTG also argues that the Agency downgraded Offeror C's proposal relative to LinTech's. Because Offeror C is not part of this protest and its treatment does not prejudice TGTG, the Court does not consider this argument.

still have received a higher number of strengths and a lower number of weaknesses than TGTG. As a result, the Court finds that LinTech's overall Technical rating would still have been higher than TGTG's. If the Agency had made a rational determination that LinTech's materially unbalanced pricing did not pose a performance risk, then it still would have awarded the contract to LinTech. Accordingly, TGTG is unable to demonstrate prejudice to it from the disparate treatment.

### C.    Past Performance Evaluation

The Agency assessed LinTech a Past Performance rating of "Satisfactory Confidence," but TGTG argues that LinTech should have received an even lower rating due to a non-response to the Agency's PPQ  This argument is not supported by the Record.

The Court reviews agencies' past performance evaluations under an "arbitrary and capricious standard of review." *CSE Const. Co., Inc. v. United States*, 68 Fed. Cl. 230, 251-52 (2003). The Court affords agencies broad deference in determining past performance ratings, provided that the agency considers the entirety of the record. *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 720 F.3d 901, 909-11 (Fed. Cir. 2013).

The Solicitation provided for a Past Performance rating developed from a relevancy score and a performance-quality score for each past performance reference. (AR342.) The Solicitation announced that for the relevancy rating, the Agency could review PPQs, information offerors submitted in their proposals, and other available information. (*Id.*)

LinTech's quote included three past performance references, two of which had PPQs returned.[8] Both of the PPQs rated LinTech's performance favorably, with ratings ranging from "Good" to "Outstanding" on sub-factors. (AR1237-40.) The Agency assessed Past Performance relevancy ratings of "Somewhat Relevant" and "Relevant" to each of the two past performance references. (*Id.*) These relevancy ratings were reasonable because they were supported by PPQs.

No PPQ was returned for LinTech's Department of Defense Office of the Inspector General contract. The Agency did "not consider" that reference in the Past Performance rating. (AR1237.) The Agency did assess a "Relevant" rating to that past performance reference "even if [the SSA doesn't] know exactly how [LinTech] performed." (AR1240.) This relevancy rating, too, was reasonable. The Solicitation allowed the Agency to consider information about past performance references submitted by the offeror or otherwise accessible by the Agency. The Agency did not need a PPQ to determine that LinTech's past performance reference was "Relevant."

---

[8] None of the three past performance references had performance information available in the Federal Awardee Performance and Integrity Information System. One past performance reference had an interim Contractor Performance Assessment Reporting System report available in the Past Performance Information Retrieval System, noting "satisfactory" performance. (AR1236-40.)

The Agency's Past Performance evaluation and ratings aligned with the Solicitation's evaluation criteria. The Court therefore does not find the Agency's Past Performance evaluation of LinTech to be arbitrary and capricious.

### D. Best Value and Prejudice to TGTG

TGTG alleges that the DHA's best value tradeoff decision was improper because it was based on a flawed price evaluation, which prejudiced TGTG. Because the validity of the best value determination depends on a proper price evaluation, the Court agrees.

To prevail in a bid protest, a plaintiff must show that the agency's significant procurement error caused the plaintiff to suffer prejudice. *Bannum, Inc. v. United States*, 404 F.3d at 1351. Prejudice is a question of fact. Prejudice exists when "there was a substantial chance that [the plaintiff] would have received the contract award but for [the agency's] error." *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996); *see also Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000). While trivial error in the procurement process does not justify relief, *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1361 (Fed. Cir. 2009), the Agency's failure to comply with an explicit requirement of the FAR in this procurement is not trivial.

TGTG has shown that it suffered prejudice resulting from the DHA's flawed unbalanced-pricing analysis. By failing to follow the FAR's two-part unbalanced-pricing analysis that required the Agency to consider both performance risk and pricing risk, the award of the contract to LinTech is contrary to the FAR mandate to consider performance risks in LinTech's unbalanced quote. If, as TGTG alleges, LinTech's materially unbalanced pricing poses a risk of nonperformance, the Solicitation would require the Agency to exclude LinTech's quote from award consideration, and the Agency would have likely awarded the contract to TGTG, the highest-rated remaining offeror. Therefore, TGTG has demonstrated sufficient prejudice.

### E. Injunctive Relief

The Tucker Act expressly empowers the Court in a bid protest to award "any relief that the court considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2). The plaintiff must show four factors by a preponderance of the evidence for permanent injunctive relief to be appropriate:

> whether (1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief.

*Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009).

TGTG has succeeded on the merits. The first injunctive-relief factor has been met.

As to the second factor, irreparable harm exists when an offeror has lost the opportunity to compete fairly for a contract. *HP Enter. Servs., LLC v. United States*, 104 Fed. Cl. 230, 245

(2012). Moreover, when procurement decisions contrary to law deprive an offeror of the opportunity to compete for a contract, the resulting lost profits are sufficient to constitute irreparable injury. *MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503, 552 (2011). TGTG has shown that it will suffer both the monetary harm of lost profits and non-monetary harm of a lost opportunity to compete on an even playing-field that would be irreparable if an injunction is not issued. The second factor is also met.

As to the balance of hardships, the harm to the government is not particularly onerous. The Agency argues that it would be required to pay the incumbent PSI's current pricing in a bridge contract and expend additional resources in crafting a new evaluation and award. Requiring the government to continue purchasing the services from the incumbent for the interim does not outweigh the irreparable harm to an offeror arising from an agency's own failure to comply with the law in awarding the contract. *HP Enter. Servs.*, 104 Fed. Cl. at 245-46. Further, the resources needed to conduct a proper procurement are only those that should have been employed originally by the Agency. Having to employ these resources again is not a hardship, but an obligation. The balance of hardships favors the granting of permanent injunctive relief.

Finally, the public interest is best served by enjoining the award to LinTech. The Agency's award decision rested on a Price evaluation that did not comport with the FAR. Such award decisions "destroy the public trust in government contracting and deprive the government of the benefits of full and open competition." *HP Enter. Servs.*, 104 Fed. Cl. at 246. Further, the Agency has not shown a countervailing public interest.

Because all four factors support injunctive relief in this protest, the award to LinTech must be enjoined.

V.     **CONCLUSION**

Because the Agency's Price evaluation failed to consider the performance risk in LinTech's materially unbalanced pricing as mandated by the FAR, the award to LinTech must be set aside. The DHA may re-evaluate the offerors' price quotes, including a full unbalanced pricing analysis if appropriate, or take any other action consistent with procurement law and this decision.

The Court will issue an order in accordance with this decision.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**
